## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                   No. CR 14-3430 JB

MICHAEL BENALLY, GABRIEL
LARGO, AND JOSHUA LARGO,

       Defendants.

### <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on Defendant Joshua Largo's Sentencing Memorandum, filed May 29, 2015 (Doc. 70)(J. Largo Memo.); (ii) Defendant Gabriel Largo's Sentencing Memorandum, filed May 29, 2015 (Doc. 73)(G. Largo Memo.); and (iii) Defendant Michael Benally's Sentencing Memorandum, filed June 30, 2015 (Doc. 86)(Benally Memo.").[1] The Court held sentencing hearings on June 3, 2015 and July 16, 2015. The primary issues are: (i) whether Defendant Joshua Largo's role in harming A.L. was "minimal," which warrants a 4-level decrease in the offense level under § 3B1.2(a) of the United States Sentencing Guidelines ("U.S.S.G."); (ii) whether J. Largo should be charged with the 4-level increase for his co-defendants' use of a dangerous weapon under U.S.S.G. § 2A2.2(b)(2)(B); and (iii) whether the Court should grant a downward variance for all of the Defendants. Because § 2A2.2(b)(2)(B)'s deadly-weapon enhancement applies to a defendant who does not use the weapon that his or her co-defendant uses to commit an assault, the Court will apply the 4-level enhancement to J. Largo's sentence. It will not apply a 4-level downward adjustment under § 3B1.2(a) to his

---

[1]Because the Defendants' cases arise from the same incident and contain similar facts and issues, the Court will dispose of all their objections in this one Memorandum Opinion and Order. The Court will therefore cite only one Presentence Investigation Report in referencing the facts when they are the same.

sentence because it concludes that his participation was not minimal.  The Court will, however, grant J. Largo a downward variance.  Regarding Defendants Gabriel Largo and Michael Benally, the Court will not grant a variance, but it will impose a sentence at the low end of the Guidelines range because several factors put downward pressure on the Defendants' sentence.

## FACTUAL BACKGROUND

The Court takes its facts from the Presentence Investigation Report for Michael Benally, disclosed July 7, 2015 ("Benally PSR") that the United States Probation Office ("USPO") prepared.  On or around September 5, 2014, Benally, G. Largo, and J. Largo -- registered members of the Navajo Nation -- assaulted A.L., who is also a registered member of the Navajo Nation.  See Benally PSR ¶ 12, at 5.  A.L. was at the flea market when the three drove up beside him and incited a verbal altercation.  See Benally PSR ¶ 13, at 5.  A.L. attempted to run away, but the Defendants started chasing him.  When they reached him, they "began kicking and punching him while he was lying on the ground."  Benally PSR ¶ 13, at 5.  Benally ran to his truck, retrieved a sledgehammer, and "started striking A.L. with the sledgehammer."  Benally PSR ¶ 13, at 5.  Benally handed the sledgehammer to G. Largo, who also struck A.L. multiple times.  See Benally PSR ¶ 13, at 5.

The Defendants "were assaulting A.L. in the middle of a four-way stop intersection." Benally PSR ¶ 14, at 5.  When a vehicle's driver attempted to stop the Defendants from hitting A.L., Benally hit the truck's windshield with the sledgehammer, causing it to shatter.  See Benally PSR ¶ 14, at 5.  The Defendants then got into Benally's truck and drove away, leaving A.L. bleeding in the street.  See Benally PSR ¶ 14, at 5.  Emergency medical crews quickly arrived and transported A.L. to the hospital.  See Benally PSR ¶ 15, at 5-6.  A.L. suffered various injuries to his head, torso, and limbs, the worst of which was "a compound/open fracture (bone

protruding from the skin) of the right tibia bone." Benally PSR ¶ 15, at 5-6.

When police officers arrived at Benally's girlfriend's residence, they observed G. and J. Largo running through an open field.  See Benally PSR ¶ 16, at 6.  The officers apprehended them and subsequently apprehended Benally.  See Benally PSR ¶ 16, at 6.  The officers noted that the Defendants all "had a strong odor of intoxicating liquor on their breath, and exhibited signs of intoxication."  Benally PSR ¶ 16, at 6.

## PROCEDURAL BACKGROUND

On March 5, 2015, Plaintiff United States of America filed an Information (Doc. 54) charging G. Largo with assault resulting in serious bodily injury, and aiding and abetting, in violation of 18 U.S.C. §§ 1153, 113(a)(3), and (2).  See Presentence Investigation Report for G. Largo at 1, disclosed May 15, 2015 ("G. Largo PSR").  That same day, G. Largo pled guilty to the Information.  See G. Largo PSR at 3.  The United States also charged J. Largo with conspiracy to commit assault resulting in bodily injury in violation of 18 U.S.C. §§ 1153, 113(a)(6) in an Information (Doc. 50).  See Presentence Investigation Report for J. Largo at 1, disclosed May 15, 2015 ("J. Largo PSR").  J. Largo similarly pled guilty on March 5, 2015.  See J. Largo PSR at 3.  On March 27, 2015, the United States filed a two-count Information (Doc. 61) charging Benally with: (i) conspiracy to commit assault resulting in bodily injury in violation of 18 U.S.C. § 371; and (ii) assault with a dangerous weapon and aiding and abetting in violation of 18 U.S.C. §§ 1153, 113(a)(3), and (2).  See Benally PSR at 1.  On March 27, 2015, Benally pled guilty to the two-count Information.  See Benally PSR at 4.

### 1.    Benally's Objections.

The USPO calculates a base offense level of 14 for Benally.  See PSR ¶ 41, at 11.  The USPO applies a 4-level increase under §2A2.2(b)(2)(B), because Benally used a dangerous

weapon.  See PSR ¶ 42, at 11.  The USPO also applies a 6-level increase under §2A2.2(b)(3)(E), because the victim's injury "is between serious bodily injury and permanent or life-threatening bodily injury."  PSR ¶ 43, at 11.  The USPO then recommends a 3-level decrease for Benally's timely acceptance of responsibility.  See PSR ¶¶ 49-50, at 11.  The PSR thus calculates Benally's total offense level to be 21.  See PSR ¶ 51, at 11.  The PSR also calculates a criminal history score of 2, resulting in a criminal history category of II.  See PSR ¶¶ 63-64, at 15.  Benally's total offense level of 21 and criminal history category of II results in a Guidelines imprisonment range of 41 to 51 months.  See PSR ¶ 115, at 26.

Benally "has only one objection" to the Benally PSR's calculations of his sentence under the Guidelines.  Benally Memo. at 1.  The PSR indicates that the probation officer has determined that A.L.'s injury was permanent or life threatening, which involves a substantial risk of death, calling for a 6-level increase.  See Benally Memo. at 1.  Benally "submits that the injury is a serious bodily injury," but argues that it "should carry a 5-level increase" because A.L.'s injury was not life-threatening.  Benally Memo. at 2.  This change would result in a Guidelines range of 37-46 months.  See Benally Memo. at 2.

The United States responded on July 10, 2015.  See United States' Response to Defendant's Version of the Offense (Dkt. 84) Objections to the Presentence Report (Dkt. 85) and Sentencing Memorandum (Dkt. 86), filed July 10, 2015 (Doc. 87)("Response").  The United States maintains that A.L.'s injury was life-threatening, warranting a 6-level increase, because it involved "a substantial risk of death."  Transcript of Hearing at 8:3-10 (taken July 16, 2015)("Benally Tr.")(Mott).[2]  "[A]ny time someone is hit more than once with a sledgehammer, that causes significant risk of death."  Tr. at 8:10-12 (Mott).  The Court noted that A.L.'s injury

---

[2]The Court's citations to all of the transcripts of the hearings refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

required surgery that inserted a metal rod into his leg, that A.L. must still walk with a cane, and that A.L. may never fully recover.  See Benally Tr. at 8:3-25 (Mott).  A.L. also suffered a laceration on his head, which required several staples.  See Benally Tr. at 8:19-14 (Mott).  Because of the seriousness of A.L.'s injuries, the Court overruled Benally's objection and maintained the PSR's 6-level increase.  See Tr. at 9:7-25 (Court).

Benally also requests a variance below the Guidelines range based on the following factors: his lack of criminal history warranting jail time, his disadvantaged and abusive childhood, his lack of a father figure in his life, and his family's strong support.  See Benally Memo. at 3-6.  The United States emphasizes that the factors set forth in § 3553(a) strongly counsel against a variance.  See Response at 7.  "Congress has demonstrated that it views the crime of assault very seriously by imposing a penalty of up to ten years in prison."  Response at 10.  Additionally, Benally "has 22 arrests prior to this incident."  Response at 11.

The Court considered the sentencing Guideline applications and the factors set forth in 18 U.S.C. § 3553(a).  See Benally Tr. at 35:3-10 (Court).  The Court noted several factors that put downward pressure on the sentence: Benally's family support, his strained relationship with A.L. before the assault, and his remorse.  See Benally Tr. at 36:1-37:7 (Court).  The Court concluded, however, that "an equal number of factors keep [the sentence] up in the Guidelines range."  Benally Tr. at 23:10-12 (Court).  These factors include Benally's arrest history, the offense's seriousness, and the need to promote respect for the law and to provide just punishment.  See Benally Tr. at 23:10-25 (Court).  The Court wanted to impose a sentence long enough to ensure that Benally would never commit a similar act in the future.  See Benally Tr. at 38:2-8 (Court).  It also stated that it needed to protect the public.  Because Benally retrieved the sledgehammer and was ultimately more culpable, the Court stated that Benally's sentence should be higher than

the other Defendants' sentences.  See Benally Tr. at 39:9-19 (Court).  In light of the factors putting downward pressure on the sentence, the Court declined to vary downward, but issued a sentence at the low end of the Guideline range.  See Benally Tr. at 39:11-19 (Court).

      **2.**      **G. Largo's Objections.**

The USPO disclosed G. Largo's Presentence Investigation Report on May 15, 2015.  The USPO calculates a base offense level of 14 for G. Largo.  See PSR ¶ 41, at 9.  The USPO applies a 4-level increase under §2A2.2(b)(2)(B), because G. Largo used a dangerous weapon.  See G. Largo PSR ¶ 42, at 9.  The USPO also applies a 6-level increase under §2A2.2(b)(3)(E), because the victim's injury "is between serious bodily injury and permanent or life-threatening bodily injury."  G. Largo PSR ¶ 43, at 9.  The USPO then recommends a 3-level decrease for G. Largo's timely acceptance of responsibility.  See G. Largo PSR ¶¶ 49-50, at 10.  The PSR thus calculates G. Largo's total offense level to be 21.  See J. Largo PSR ¶ 51, at 10.  The PSR also calculates a criminal history score of 0, resulting in a criminal history category of I.  See PSR ¶ 55, at 10.  G. Largo's total offense level of 21 and criminal history category of I results in a Guidelines imprisonment range of 37-46 months.  See G. Largo PSR ¶ 90, at 17.

G. Largo does not object to the PSR's computations of his Guidelines sentence: 37 to 46 months.  See G. Largo Memo. at 7.  He requests a variance down to 18 months of incarceration. See G. Largo Memo. at 7.  First, he argues that "it was Michael Benally, not Gabriel, who instigated the fight; Gabriel was only a follower."  G. Largo Memo. at 7-8.  Second, he contends that his "cognition is such that he is influenced by others greatly."  G. Largo Memo. at 8.

The United States responded to G. Largo's objections on June 2, 2015 (Doc. 75)("Response").  It argues that a departure or variance is not warranted under the § 3553(a) factors.  See Response at 2.  First, it contends that the offense's nature and circumstances were

severe.  See Response at 3.  Second, it states that "[n]othing about Defendant's history is so extraordinary as to warrant a variance."  Response at 3.  Third, it states that the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, provide adequate deterrence, and protect the public from further crimes weighs against a variance.  See Response at 4-5.

The Court held a hearing on June 3, 2015.  See Transcript of Hearing (taken June 3, 2015)("G. Largo Tr.").  It considered the Guidelines applications and the factors set forth in 18 U.S.C. § 3553(a).  See G. Largo Tr. at 6-25 (Court).  The Court identified factors that put downward pressure on the sentence: G. Largo's age, his lack of education and experience, his cognitive learning disabilities, and his alcohol addiction.  See G. Largo Tr. at 12:3-16 (Court). The Court also identified the main factor that put upward pressure on the sentence: the offense's serious nature.  See G. Largo Tr. at 13:1-11 (Court).  In sum, the Court determined that "the factors that counsel for keeping this up in the Guidelines range outweigh those that suggest a variance is appropriate, but not by much."  G. Largo Tr. at 14:17-20 (Court).  Accordingly, the Court overruled G. Largo's request for a variance and imposed a sentence at the low end of the Guidelines range.  See Tr. at 15:5-18 (Court).

### 3.  J. Largo's Objections.

The USPO disclosed J. Largo's Presentence Investigation Report on May 15, 2015.  The USPO calculates a base offense level of 14 for J. Largo.  See PSR ¶ 41, at 9.  The USPO applies a 4-level increase under §2A2.2(b)(2)(B), because J. Largo used a dangerous weapon.  See J. Largo PSR ¶ 42, at 9.  The USPO also applies a 6-level increase under §2A2.2(b)(3)(E), because the victim's injury "is between serious bodily injury and permanent or life-threatening bodily injury."  J. Largo PSR ¶ 43, at 9.  The USPO then recommends a 3-level decrease for J. Largo's

timely acceptance of responsibility, see J. Largo PSR ¶¶ 49-50, at 10, and a 2-level decrease for J. Largo's minor role in the criminal activity under § 3B1.2(b), see J. Largo PSR ¶ 45, at 9. The PSR thus calculates J. Largo's total offense level to be 19. See J. Largo PSR ¶ 51, at 11. The PSR also calculates a criminal history score of 0, resulting in a criminal history category of I. See PSR ¶ 55, at 10. J. Largo's total offense level of 19 and criminal history category of I results in a Guidelines imprisonment range of 30-37 months. See J. Largo PSR ¶ 81, at 15.

J. Largo requests a downward variance. See J. Largo Memo. at 1-2. He contends that he "has zero criminal history points, and was 20 years old at the time of this offense." J. Largo Memo. at 1. Additionally, he states that, because he did not use the sledgehammer to attack A.L., his sentence "severely overstates Defendant's individual responsibility for the harm done to A.L." J. Largo Memo. at 2. He states that his co-defendants' use of a sledgehammer results in a 4-level increase for the use of a dangerous weapon, and the severity of A.L.'s injuries -- primarily from the sledgehammer -- results in a 6-level increase. See J. Largo Memo. at 1. At the same time, however, the PSR recognizes that J. Largo did not assault A.L. with the sledgehammer, and that "the severity of the injuries A.L. sustained as a result of Joshua Largo's actions were much less than those caused by" his co-Defendants. J. Largo Memo. at 1 (quoting J. Largo PSR ¶ 26, at 7). Accordingly, the PSR recommends a 2-level reduction for J. Largo's "minor" role in the offense. PSR ¶ 26, at 7; id. ¶ 45, at 9. J. Largo argues that his role in harming A.L. was "minimal," not "minor," which warrants a 4-level decrease in the offense level under U.S.S.G. § 3B1.2(a) rather than only a 2-level decrease if his role were "minor." J. Largo Memo. at 1-2. Similarly, he argues that, because he did not assault A.L. with a sledgehammer, he should also "not be charged with the 4-level increase for his codefendants' use of that dangerous weapon" under § 2A2.2(b)(2)(B). J. Largo Memo. at 2.

- 8 -

The United States does not deny that J. Largo is the least culpable, but it maintains that his lower culpability "does not put him into the range of a minimal participant."  Transcript of Hearing at 11:7-13 (taken June 3, 2015)("J. Largo Tr.")(Mott).  While the United States opposes a variance, it agrees that a sentence at the low end of the Guidelines would be sufficient in J. Largo's case.  See J. Largo Tr. at 20:6-19 (Mott).

In arriving at its sentence, the Court considered the Guidelines range and sentencing goals, finding that numerous factors put downward pressure on the sentence.  See J. Largo Tr. at 21:24-22:25 (Court).  The factors included J. Largo's reliable employment history, his young age, and his good performance on supervision.  See J. Largo Tr. at 22:1-25 (Court).  The Court also noted that several factors put upward pressure on the sentence, including the offense's seriousness, promoting respect for the law, providing just punishment, affording adequate deterrence, and protecting the public.  See J. Largo Tr. at 23:1-25 (Court).  In light of these factors, the Court concluded that a variance the equivalent of two offense levels is appropriate, which produces a working Guidelines range of 24 to 30 months.  See J. Largo Tr. at 24:1-11 (Court).

## LAW REGARDING THE UNITED STATES SENTENCING GUIDELINES

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court of the United States of America severed the mandatory provisions from the Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 1837, thus making the Guidelines sentencing ranges effectively advisory. See 543 U.S. at 245.  In excising the two sections, the Supreme Court left the remainder of the Act intact, including 18 U.S.C. § 3553: "Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing.  Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable."  543 U.S. at 261.

Congress has directed sentencing courts to impose a sentence "sufficient, but not greater than necessary" to comply with four statutorily defined purposes enumerated in § 3553(a)(2):

    **(A)**    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    **(B)**    to afford adequate deterrence to criminal conduct;

    **(C)**    to protect the public from further crimes of the defendant; and

    **(D)**    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

18 U.S.C. § 3553(a)(2)(A)-(D).

[A] defendant who has been found guilty of an offense described in any Federal statute . . . shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case.

18 U.S.C. § 3551.  To achieve these purposes, § 3553(a) directs sentencing courts to consider: (i) the Guidelines; (ii) the nature of the offense and the defendant's character; (iii) the available sentences; (iv) a policy favoring uniformity in sentences for defendants who commit similar crimes; and (v) the need to provide restitution to victims.  See 18 U.S.C. § 3553(a)(1), (3)-(7).

Although the Guidelines ranges are no longer mandatory, both the Supreme Court and the Tenth Circuit have clarified that, while the Guidelines ranges are one of several factors that § 3553(a) enumerates, they are entitled to considerable deference.  See Rita v. United States, 551 U.S. 338, 349 (2007)("The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate."); United States v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor among many"), overruled on other grounds by Gall v. United

States, 525 U.S. 38 (2007), as recognized in United States v. White, 265 F. App'x 719, 728 n.8 (10th Cir. 2008)(unpublished).  They are significant, because "the Guidelines are an expression of popular political will about sentencing that is entitled to due consideration . . . [and] represent at this point eighteen years' worth of careful consideration of the proper sentence for federal offenses."   United States v. Cage, 451 F.3d at 593 (internal quotation marks omitted).   A reasonable sentence is one that also "avoid[s] unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."   18 U.S.C. § 3553(a)(6).  See United States v. Booker, 543 U.S. at 261-62.

The Tenth Circuit has "joined a number of other circuits in holding that a sentence within the applicable Guidelines range is presumptively reasonable."  United States v. Terrell, 445 F.3d 1261, 1264 (10th Cir. 2006), overruled on other grounds by Rita v. United States, 551 U.S. 338, 349 (2007), as recognized in United States v. Zamora-Solorzano, 528 F.3d 1247, 1251 n.3 (10th Cir. 2008).  This presumption, however, is an appellate presumption, and not one that the trial court can or should apply.  See Rita v. United States, 551 U.S. at 351; Gall v. United States, 552 U.S. at 46-47; Kimbrough v. United States, 552 U.S. 85, 90-91 (2007).  Instead, the trial court must undertake the § 3553(a) balancing of factors without any presumption in favor of the advisory[3] Guidelines sentence.  See Rita v. United States, 551 U.S. at 351; Gall v. United States, 552 U.S. at 46-47; Kimbrough v. United States, 552 U.S. at 90-91.

_____

[3]Attorneys and courts often say that the "Guidelines" are advisory, but it appears more appropriate to say that the Guideline ranges are advisory.  Gall v. United States, 522 U.S. at 46 ("As a result of our decision [in United States v. Booker], the Guidelines are now advisory[.]"); United States v. Leroy, 298 F. App'x 711, 712 (10th Cir. 2008)(unpublished)("[T]he Guidelines are advisory, not mandatory."); United States v. Sells, 541 F.3d 1227, 1237 (10th Cir. 2008)("[T]he sentence ultimately imposed by the district court was based on a correctly calculated Guidelines range, a stated consideration of the § 3553(a) factors, and an understanding that the Guidelines are advisory.").  The Court must consider the Guidelines, see Gall v. United States, 522 U.S. at 46 ("It is . . . clear that a district judge must give serious consideration to the extent of any departure from the Guidelines . . . ."), and must accurately calculate the Guidelines

While the Supreme Court's decision in <u>United States v. Booker</u> has given the sentencing court discretion that it did not have earlier, the sentencing court's

---

range, <u>see</u> <u>Gall v. United States</u>, 522 U.S. at 49 ("[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range."). The Court is not mandated, however, to apply a sentence within the calculated Guidelines range. <u>See</u> <u>United States v. Sierra-Castillo</u>, 405 F.3d 932, 936 n.2 (10th Cir. 2005)("[D]istrict courts post-<u>Booker</u> have discretion to assign sentences outside of the Guidelines-authorized range . . . ."). <u>Accord</u> <u>United States v. Chavez-Rodarte</u>, No. CR 08-2499 JB, 2010 WL 3075285, at *2-3 (D.N.M. July 16, 2010)(Browning, J.).

The Court must adhere to the following three-step sequence when sentencing a criminal defendant: first, determining the appropriate sentencing range on the basis of Guidelines' chapters 2 through 4; next, applying Guidelines-contemplated departures based on parts 5H and 5K; and, only then, varying from the Guidelines framework on the basis of the § 3553(a) factors taken as a whole. The Court must follow this sequence, because: (i) the Guidelines expressly provide for it, and courts must still consult the Guidelines, even if they will subsequently vary from them in the third step of the sequence; and (ii) adherence to this sequence is the only way to give effect to 18 U.S.C. § 3553(e).

. . . .

The Supreme Court held in <u>United States v. Booker</u> that "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing," 543 U.S. at 264, but further expounded in <u>Kimbrough v. United States</u> that "courts may vary [from the Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines," 552 U.S. 85, 101 (2007)(alteration in original)(internal quotation marks omitted). In theory, this freedom could mean that a district court may excise individual portions of the Guidelines along the way as it performs an otherwise by-the-book Guidelines analysis, end up with a sentence with built-in variances, and never even know what sentence a true, rigid Guidelines application would yield. In practice, however, appellate courts expect district courts to first obtain the true Guidelines' sentence range and circumscribe their <u>United States v. Booker</u>-granted authority to post-Guidelines analysis "variances." <u>Irizarry v. United States</u>, 553 U.S. 708, 710-16 (2008). A district court that attempts to vary from U.S.S.G. § 1B1.1's basic sequence most likely acts procedurally unreasonably. <u>See</u> <u>Gall v. United States</u>, 552 U.S. 38, 51 (2007)(holding that a sentence is procedurally reasonable if "the district court committed no significant procedural error, <u>such as failing to calculate (or improperly calculating) the Guidelines range</u>, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence" (emphasis added)).

<u>United States v. Nolf</u>, No. CR 10-1919-002, 2014 WL 3377695, at *20-21 (D.N.M. June 20, 2014)(Browning, J.)(emphasis in original).

first task remains to accurately and correctly determine the advisory-guideline sentence.   Thus, before the sentencing court takes up a defendant's <u>Booker</u> arguments, the sentencing court must first determine whether the defendant is entitled to downward departures.   The sentencing court may, however, also use these same departure factors in the <u>Booker</u> calculus, even if the court does not grant a downward departure.

<u>United States v. Apodaca-Leyva</u>, No. CR 07-1479 JB, 2008 WL 2229550, at *6 (D.N.M. Feb. 13, 2008)(Browning, J.).   The Supreme Court recognized, however, that the sentencing judge is "in a superior position to find facts and judge their import under § 3553(a) in each particular case."   <u>Kimbrough v. United States</u>, 552 U.S. at 89.   Applying § 3553(a)'s factors, the Court has found that the case of an illegal immigrant who re-enters the United States to provide for his two children and two siblings was not materially differentiated from other re-entry cases, and, thus, no variance from the Guidelines sentence was warranted.   <u>See</u> <u>United States v. Alemendares-Soto</u>, No. CR 10-1922 JB, 2010 WL 5476767, at *12 (D.N.M. Dec. 14, 2010) (Browning, J.).   On the other hand, in <u>United States v. Jager</u>, No. CR 10-1531 JB, 2011 WL 831279 (D.N.M. Feb. 17, 2011)(Browning, J.), although the defendant's military service was not present to an unusual degree and, thus, did not warrant a departure, the Court found that a variance was appropriate, because the defendant's military service was "superior and uniformly outstanding," as the defendant appeared to have been "trustworthy[] and dedicated, and he served with distinction."   2011 WL 831279, at *14.

## ANALYSIS

Because U.S.S.G. § 2A2.2(b)(2)(B)'s deadly-weapon enhancement applies to a defendant who does not use the weapon that his or her co-defendant uses to commit an assault, the Court will apply the 4-level enhancement to J. Largo's sentence.   It will not apply a 4-level downward adjustment under § 3B1.2(a) to his sentence because it concludes that his participation was not minimal.   Finally, for the reasons stated at the hearing, the Court will not grant a variance to G.

Largo or Benally.  It will, however, impose a sentence at the low end of the Guidelines range.

**I.      THE COURT WILL APPLY § 2A2.2(b)(2)(B)'S 4-LEVEL ENHANCEMENT FOR USING A DANGEROUS WEAPON TO J. LARGO'S SENTENCE.**

The Court will apply § 2A2.2(b)(2)(B)'s 4-level enhancement for using a dangerous weapon in the commission of aggravated assault.  As the USPO and the United States correctly state, "in the case of a jointly undertaken criminal activity," defendants are culpable for "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity."  U.S.S.G. § 1B1.3(a)(1)(B).

On three occasions, the United States Court of Appeals for the Ninth Circuit has held that § 2A2.2(b)(2)(B)'s deadly-weapon enhancement applies to a defendant whose co-defendant was the weapon's exclusive user, so long as it was reasonably foreseeable to the defendant that the co-defendant might use the weapon in the assault.  See United States v. Old Chief, 571 F.3d 898, 902 (9th Cir. 2009), cert. denied, 558 U.S. 1016 (2009); United States v. Delgado, 981 F.2d 1260, 1260 (9th Cir. 1992); United States v. Willis, 899 F.2d 873, 875 (9th Cir. 1990).  In United States v. Old Chief, the Ninth Circuit concluded that § 2A2.2(b)(2)(B)'s enhancement applied, even though the defendant never held the knife his co-defendants used to assault the victim, because the defendant knew his co-defendant possessed a knife and the Ninth Circuit found no evidence "that it was not reasonably foreseeable to him that the knife would be used in the attack."  571 F.3d at 902.  In United States v. Delgado, the Ninth Circuit stated that "it is irrelevant that Delgado had no actual knowledge of the gun.  It was reasonably foreseeable that his codefendant would possess a gun during the execution of a bank robbery."  981 F.2d at 1260.  In United States v. Willis, the Ninth Circuit held that "it [was] reasonable to infer that [Willis] saw the [co-defendant's] gun" in the moments leading up to the offense, because the co-defendant "was wearing the gun in his waistband such that it was easily seen."  899 F.2d at 875.

- 14 -

Here, the weapon involved was a sledgehammer, a more conspicuous weapon than a pistol tucked into a waistband.  J. Largo would have been aware of his co-Defendants' possession of the weapon in the moments leading up to the assault, and it was reasonably foreseeable to J. Largo that his co-Defendants might use the weapon in the assault.  Benally carried the sledgehammer -- along with numerous other construction tools -- in the open bed of his truck.  J. Largo could easily see what items Benally was carrying and could have foreseen that Benally would use them in the assault.  When a defendant goes into a fight knowing that his co-defendant is carrying weapons, he or she can reasonably predict that his or her co-defendants may use weapons, even if the defendant does not know which weapon from among many he may choose.  See United States v. Old Chief, 571 F.3d at 902; United States v. Willis, 899 F.2d at 875.  In this fight, it was reasonably foreseeable that Benally would use the heavy construction tools in the back of his truck.  The Court, thus, has sufficient evidence to apply the deadly-weapon enhancement.

## II.   THE COURT WILL NOT APPLY A 4-LEVEL DOWNWARD ADJUSTMENT TO J. LARGO'S SENTENCE UNDER § 3B1.2(a) BECAUSE J. LARGO'S CONTRIBUTION WAS NOT "MINIMAL."

The Court will not apply a 4-level adjustment to J. Largo's sentence under § 3B1.2(a).  Section 3B1.2[4] "provides a range of adjustments for a defendant who plays a part in committing

---

[4]On April 9, 2015, the United States Sentencing Commission (the "Commission") voted to promulgate amendments to some portions of the United States Sentencing Guidelines ("U.S.S.G.").  See NATIONAL SENTENCING RESOURCE COUNSEL PROJECT, FEDERAL PUBLIC & COMMUNITY DEFENDERS, SUMMARY OF 2015 PROPOSED AMENDMENTS TO THE SENTENCING GUIDELINES 1 (2015), available at https://goo.gl/8BjPUi.  The Commission submitted the amendments to Congress on April 30, 2015 pursuant to its authority under 28 U.S.C. § 994(p).  The amendments went into effect on November 1, 2015, after the Court sentenced the Defendants.  The Commission made some several changes to § 3B1.2.

First, the Commission addressed a circuit split on the meaning of "average participant," adopting the approach of the United States Court of Appeals for the Seventh Circuit and the United States Court of Appeals for the Ninth Circuit, which define "average participant" as those persons who actually participated in the criminal activity at issue in the defendant's case, so that

the defendant's relative culpability is determined only by reference to his or her co-participants in the case at hand.  See, e.g., United States v. Benitez, 34 F.3d 1489, 1498 (9th Cir. 1994); United States v. DePriest, 6 F.3d 1201, 1214 (7th Cir. 1993).  The Commission rejected the approach of the United States Court of Appeals for the First Circuit and the United States Court of Appeals for the Second Circuit, which have concluded that the "average participant" also includes "the universe of persons participating in similar crimes."  See United States v. Santos, 357 F.3d 136, 142 (1st Cir. 2004); see also United States v. Rahman, 189 F.3d 88, 159 (2d Cir. 1999).  "Under this latter approach, courts w[ould] usually consider the defendant's culpability relative both to his co-participants and to the typical offender."  UNITED STATES SENTENCING COMMISSION, AMENDMENTS TO THE SENTENCING GUIDELINES 45 (2015).  The amendment revises the commentary to specify that, when determining the mitigating role, the defendant is to be compared with the other participants "in the criminal activity."  See U.S.S.G. § 3B1.2, cmt. 3(A) ("This section provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant in the criminal activity.").

Second, the amendment provides a non-exhaustive list of factors for the court to consider in determining whether to apply a mitigating role adjustment under § 3B1.2 and, if so, the amount of the adjustment.  See UNITED STATES SENTENCING COMMISSION, AMENDMENTS TO THE SENTENCING GUIDELINES 46 (2015).  Commentary note 3(C) now states:

> *Fact-Based Determination.* – *The determination whether to apply subsection (a) or subsection (b), or an intermediate adjustment, is based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case.*
>
> *In determining whether to apply subsection (a) or (b), or an intermediate adjustment, the court should consider the following non-exhaustive list of factors:*
>
> *(i)     the degree to which the defendant understood the scope and structure of the criminal activity;*
>
> *(ii)    the degree to which the defendant participated in planning or organizing the criminal activity;*
>
> *(iii)   the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;*
>
> *(iv)    the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts of the defendant performed and the responsibility and discretion the defendant had in performing those acts;*
>
> *(v)     the degree to which the defendant stood to benefit from the criminal activity.*

U.S.S.G. § 3B1.2, cmt. 3(C).

Third, the commentary now states that "a defendant who does not have a proprietary

the offense that makes him substantially less culpable than the average participant."  U.S.S.G. §

3B1.2, app. n.3(a).  Subsection (b) covers a defendant who "is less culpable than most other

participants, but whose role could not be described as minimal."  U.S.S.G. § 3B1.2, app. n.5.

The Tenth Circuit has held that the inquiry whether a defendant is a minor or minimal participant

must "focus upon the defendant's knowledge or lack thereof concerning the scope and structure

of the enterprise and of the activities of others involved in the offense."  United States v. Salazar-

Samaniega, 361 F.3d 1271, 1277 (10th Cir. 2004).  To receive the adjustment, the defendant has

"the burden to prove by a preponderance of the evidence" that he was "less culpable than most

other participants."  United States v. Ballard, 16 F.3d 1110, 1114-15 (10th Cir. 1994).

        The Tenth Circuit has looked to a defendant's knowledge in determining whether a

minor- or minimal-role adjustment applies.  See, e.g., United States v. Adams, 751 F.3d 1175,

1180 (10th Cir. 2014)(finding the defendant's "knowledge of the scheme" to rob a bank relevant

to the determination that he was not a minor participant); United States v. Lockhart, 37 F.3d

1451, 1455 (10th Cir. 1994)(noting that the PSR revealed that the defendant had "knowledge or

understanding" of the drug enterprise, and that he was thus "not a minimal or *minor* participant"

(internal quotation marks omitted)(emphasis in original)).

        In United States v. Aguirre-Garcia, No. CR 08-0823 JB, 2009 WL 5851092 (D.N.M.

Dec. 15, 2009)(Browning, J.), the Court found that a defendant was not entitled to a mitigating

role adjustment, because the defendant, with two co-defendants, knowingly transported cocaine

---

interest in the criminal activity and who is simply being paid to perform certain tasks should be
considered for an adjustment under this guideline" and "[t]he fact that a defendant performs an
essential or indispensable role in the criminal activity is not determinative."  U.S.S.G. § 3B1.2,
cmt. 3(C).  Finally, "the commentary discussing individuals who perform limited functions has
been changed to state that they 'may receive' a mitigating role adjustment rather than that they
'are not precluded' from receiving an adjustment."  See NATIONAL SENTENCING RESOURCE
COUNSEL PROJECT, FEDERAL PUBLIC & COMMUNITY DEFENDERS, SUMMARY OF 2015 PROPOSED
AMENDMENTS TO  THE SENTENCING GUIDELINES 2 (2015), available at https://goo.gl/8BjPUi.
(discussing U.S.S.G. § 3B1.2, cmt. 3(A)).

out of state on two occasions.  See 2009 WL 5851092, at *1-3.  Because Aguirre-Garcia had the same knowledge and took the same actions as his co-defendants, in driving a car which the defendants knew contained cocaine out of state, the Court found that Aguirre-Garcia was not entitled to a mitigated role adjustment, even though he had informed his co-defendants that he did not want to transport drugs and was only along for the ride.  See 2009 WL 5851092, at *1-3.  On the other hand, where a defendant charged for conspiring to distribute methamphetamine possessed only seven grams out of the 400 grams involved in the conspiracy, and no other evidence supported the defendant being more than a "user," the Court granted a minor role adjustment, because a preponderance of the evidence did not support that the defendant was a "dealer," as were his co-defendants in the conspiracy.  United States v. Justice, No. CR 09-3078 JB, 2012 WL 394455, at *1-5, 9-10 (D.N.M. Jan. 23, 2012)(Browning, J.).

The Tenth Circuit's ruling in United States v. Ayers, 84 F.3d 382, 384 (10th Cir. 1996), is also instructive.  In that case, the PSR noted that several weeks before his arrest, the defendant

> rented an apartment in Albuquerque, New Mexico and that a Mr. Paul Markland helped him pay for it. . . .  Mr. Ayers knew that Mr. Markland was selling cocaine and using the apartment to prepare and store crack cocaine, contact potential buyers, and store money. . . .  Mr. Ayers acknowledged "that he had sometimes traveled with Markland to pick up money, and had sold cocaine for Markland on occasion over a period of several months."  At the time of his arrest, police discovered 90.8 grams of crack cocaine, .4 grams of powdered cocaine, and 3 grams of marijuana in Mr. Ayers's apartment.

84 F.3d at 384.

The Tenth Circuit acknowledged that there was no indication that the defendant arranged drug sales or made drug deliveries when he leased the apartment, but upheld the district court's refusal to grant a mitigating role adjustment.  The Tenth Circuit reasoned that

> Mr. Ayers's admitted knowledge of Mr. Markland's drug dealing, his accompanying Mr. Markland in the collection of debts, and his allowing Mr. Markland to use the apartment are all factors supporting the inference that Mr.

- 18 -

> Ayers knowingly permitted Mr. Markland to use the apartment to sell drugs.  It was therefore not clearly erroneous for the district court to find that . . . Mr. Ayers served an important function in [a] drug distribution network, such that he was not entitled to an offense level reduction under U.S.S.G. 3B1.2.

United States v. Ayers, 84 F.3d at 384.

J. Largo must therefore show that he was substantially less culpable than his co-defendants.  See U.S.S.G. § 3B1.2.  The above cases demonstrate that he cannot make this showing if he was deeply involved in the offense, even if he was less culpable than others.  See United States v. Cubillos, 474 F.3d 1114, 1120 (8th Cir. 2007).  Accordingly, a further reduction is not available merely because he played a lesser role than his co-defendants.  See United States v. Rahman, 189 F.3d 88, 159 (2d Cir. 1999).  To qualify as a minimal participant, J. Largo must show he is among the least culpable of those involved -- to the extent of being a peripheral player in the criminal activity.  See United States v. Santos, 357 F.3d 136, 142 (1st Cir. 2004).

J. Largo has not met his burden here.  Although he did not use the sledge hammer, he actively participated in the assault.  See Tr. at 14:19-21 (Court).  Application Note 4 to § 3B1.2 states that "the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant."  §3B1.2, app. n.4.  J. Largo was involved from the beginning to the end.  See PSR ¶¶ 12-15, at 5-6.  He never withdrew.  This situation is not one in which he did not understand what his co-Defendants were doing.  Moreover, J. Largo's mere presence indicated that he approved of his co-Defendants' behavior and could have suggested to bystanders that he would fight off anyone who tried to approach.  See J. Largo Tr. at 5:1-23 (Mott).  In other words, his presence allowed the beating to continue.  Application Note 5 provides that § 3B1.2(b)'s 2-level reduction for minor participants applies to defendants who are "less culpable than most other participants, but whose role could not be described as minimal."  § 3B1.2(b), app. n.5.  Here, where J. Largo

- 19 -

assaulted A.L. and prevented bystanders from stopping the assault, his role is best classified as minor, and the Court will not apply an additional 2-level reduction.  Notably, the PSR's calculation has already accounted for J. Largo's lesser contribution to A.L.'s injuries and his failure to use the sledgehammer himself by recommending a 2-level decrease for J. Largo's minor role in the criminal activity under § 3B1.2(b).      See PSR ¶ 26, at 7; id. ¶ 45, at 9. Although the Court will not apply a 2-level reduction, it will grant a downward variance the equivalent of 2 offense levels for the reasons stated at the hearing.  See J. Largo Tr. at 24:1-11 (Court); supra 7-8.  This variance produces a working Guidelines range of 24 to 30 months.  See J. Largo Tr. at 24:1-11 (Court).

## III.    THE COURT WILL NOT GRANT A VARIANCE TO G. LARGO OR TO BENALLY.

For the reasons the Court stated at the hearing, the Court will not grant a variance to G. Largo.  It will, however, impose a sentence at the low end of the Guidelines range.  See G. Largo Tr. at 16:8-11 (Court); supra 5-6.  Similarly, the Court will not grant a variance to Benally for the reasons stated at the hearing.  In light of the factors putting downward pressure on the sentence, the Court will impose a sentence at the low end of the Guideline range.  See Benally Tr. at 39:11-19 (Court).

**IT IS ORDERED** that the objections in Defendant Joshua Largo's Sentencing Memorandum, filed May 29, 2015 (Doc. 70), are overruled and his request for a variance is granted.  The Court will apply U.S.S.G. § 2A2.2(b)(2)(B)'s 4-level enhancement to J. Largo's sentence, and will not apply a 4-level downward adjustment to his sentence under U.S.S.G. § 3B1.2(a).  The Court will, however, grant J. Largo a downward variance.  The objections and requests for a variance in Defendant Gabriel Largo's Sentencing Memorandum, filed May 29, 2015 (Doc. 73), and Defendant Michael Benally's Sentencing Memorandum, filed June 30, 2015

(Doc. 86), are overruled and denied.  The Court will not grant a variance, but it will impose a

sentence at the low end of the Guidelines range.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Damon P. Martinez
    United States Attorney
Jonathon Gerson
Linda Mott
    Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

Stephen P. McCue
    Federal Public Defender
Michael A. Keefe
    Assistant Federal Public Defender
Federal Public Defender's Office
Albuquerque, New Mexico

      *Attorneys for Defendant Michael Benally*

Robert R. Cooper
Robert R. Cooper Law Firm, P.C.
Albuquerque, New Mexico

      *Attorney for Defendant Gabriel Largo*

D. Eric Hannum
Albuquerque, New Mexico

      *Attorney for Defendant Joshua Largo*